UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAMOND WARD,

    Defendant.
_____/

Case No. 16-cv-20632

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE [#50]**

### I. INTRODUCTION

On June 13, 2017, Defendant Damond Ward pled guilty to One Count of Bank Robbery, in violation of 18 U.S.C. § 2113(a). Per the agreed upon guidelines range set forth in the plea agreement, the Court sentenced Defendant to a term of 108 months imprisonment. Defendant now moves to vacate that sentence, arguing trial counsel was ineffective in not challenging certain sentence enhancements.

Present before the Court is Defendant's Motion to Vacate Sentence. Dkt. No. 50. For the reasons set forth below, the Court will DENY the Motion [#50].

### II. BACKGROUND

Defendant was charged with and convicted of committing a bank robbery that occurred on June 6, 2016. Dkt. No. 37, p. 2 (Pg. ID 102). That day,

Defendant entered the Lake Trust Credit Union located at 2222 Packard Street in Ann Arbor, Michigan, approached a teller, and presented a note which demanded (paraphrased): "GIVE ME 45000 I DON'T WANT TO HURT YOU." *Id.* Upon receiving the note, the teller emptied the contents of her cash drawer and handed it over to Defendant. *Id.* Defendant then fled the scene on foot with a total of $12,063. *Id.*

In addition to the above robbery, Defendant admitted to committing, aiding and abetting, and/or conspiring with others to commit seven other bank robberies between May 19, 2016 and September 12, 2016. *Id.* at pp. 4-5 (Pg. ID 104-05). Based on the stipulated facts surrounding four of those robberies, the parties agreed that Defendant would receive four two-level sentence enhancements under U.S.S.G. § 3B1.1, which provides for such where a defendant was "an organizer, leader, manager, or supervisor in any criminal activity." *See* U.S.S.G. § 3B1.1(c). The factual bases for those robberies are as follows:

(1) On June 1, 2016, Ward drove with others from Detroit to Plymouth, Michigan and entered a PNC Bank. Ward approached a teller and presented a note demanding money. The teller surrendered $3,300.00 cash to Ward. To accomplish this bank robbery, Ward recruited another person to drive him to the bank and serve as the getaway driver. The bank's deposits were then insured by the FDIC.

(2) On July 8, 2016, a bank robbery using a demand note occurred at a Huntington bank in Toledo, Ohio. Ward admits that he helped plan this bank robbery with other individuals and aided and abetted the commission of this bank robbery, which resulted in $10,000 being taken. The bank's deposits were then insured by the FDIC.

(3) On August 12, 2016, a bank robbery using a demand note occurred at a Great Lakes Credit Union in Sylvania, Ohio. Ward admits that he helped plan this bank robbery with other individuals, that he recruited other individuals to participate in this robbery, and that he aided and abetted the commission of this bank robbery, which resulted in $10,634 being taken. The credit union's deposits were then insured by the NCUA. Ward admits that he was on pretrial release when he committed this offense.

(4) On August 16, 2016, a bank robbery using a demand note occurred at a Genesys Credit Union in Marysville, Michigan. Ward admits that he helped plan this bank robbery with other individuals, that he recruited other individuals to participate in this robbery, and that he aided and abetted the commission of this bank robbery, which resulted in $8,922 being taken. The credit union's deposits were then insured by the NCUA. Ward admits that he was on pretrial release when he committed this offense.

Dkt. No. 37, pp. 4-5 (Pg. ID 104-05). Pursuant to the plea agreement, Defendant also received a two-level sentence enhancement under U.S.S.G. § 2B3.1(b)(2)(F) for each of the eight robberies because they all involved someone making a threat of death. *See* U.S.S.G. § 2B3.1(b)(2)(F). The stipulated facts for all but one[1] of the robberies acknowledge the use of a demand note to carry out the offenses. *See* Dkt. No. 37, pp. 2-5 (Pg. ID 102-05).

---

[1] On May 27, 2016, Ward drove with others from Detroit to Lansing, Michigan, and aided and abetted another person in robbing a Lake Trust Credit Union. The teller surrendered approximately $10,000 to the other person who robbed the bank, that person fled, and that person returned to Detroit with Ward and others. The credit union's deposits were then insured by the NCUA. Dkt. No. 37, p. 4 (Pg. ID 104).

## III. LEGAL STANDARD

28 U.S.C. § 2255 provides prisoners with a mechanism to raise collateral attacks on their sentence. *See* 28 U.S.C. § 2255(a). Unless the prisoner's motion conclusively shows that they are entitled to no relief, the court shall notify and serve the United States attorney, grant a prompt hearing, and determine the issues -- making findings of fact and conclusions of law. *See* 28 U.S.C. § 225(b). If the court finds that a judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been a denial or infringement of the constitutional rights of the prisoner such as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate. *See id.*

## IV. DISCUSSION

To establish a claim for ineffective assistance of counsel, a defendant must show that (1) her attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that this deficiency prejudiced the outcome. *See Hill v. Lockhart*, 474 U.S. 52, 57-60 (1985); *United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004); *see also Strickland v. Washington*, 466 U.S. 668, 688 (1984) ("More specific guidelines are not appropriate."). "Unless a defendant makes both showings, it cannot be said that

the conviction or [sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. The Sixth Circuit has instructed reviewing courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997) (quoting *Strickland*, 466 U.S. at 689).

Here, Defendant challenges the two-level sentence enhancements he received under both U.S.S.G. § 3B1.1 and U.S.S.G. § 2B3.1. He maintains that counsel was ineffective in not raising an objection to those enhancements. The Court will disagree.

### A. The Stipulated Facts in the Plea Agreement Support Defendant's Sentence Enhancements Under U.S.S.G. § 3B1.1.

Defendant first argues that counsel was ineffective in not challenging his sentence enhancements under § 3B1.1. Specifically, he contends that he cannot be considered an organizer, leader, manager, or supervisor of the June 1, July 8, August 12, or August 16, 2016 bank robberies because there were no co-defendants charged in his indictment. *See* Dkt. No. 50, p. 2 (Pg. ID 174). Defendant, however, is mistaken on the scope of § 3B1.1.

U.S.S.G. § 3B1.1(c) provides that if a defendant was "an organizer, leader, manager, or supervisor in any criminal activity," then the court should increase their offense level by two points. U.S.S.G. § 3B1.1(c). Application Note Two of

that section instructs, "[t]o qualify for an adjustment under this section, the defendant must have been the organizer of one or more other participants." U.S.S.G. § 3B1.1 n.2. A participant, in turn, is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 n.1.

Here, the stipulated facts set forth in the plea agreement show that during the June 1, July 8, August 12, and August 16, 2016 bank robberies, Defendant either recruited or helped plan with others the commission of those offenses. *See* Dkt. No. 37, pp. 4-5 (Pg. ID 104-105). While these other individuals were not charged as co-defendants in this case, their actions in furthering the bank robberies make them criminally responsible, and therefore, participants to the offenses. Moreover, the Government represents that these individuals were charged separately. *See* Dkt. No. 58, p. 11 (Pg. ID 253). If accurate, this only lends further support to the conclusion that they were participants. Given these facts, which Defendant stipulated to in his plea agreement, the Court cannot find that counsel's representation fell below an objective standard of reasonableness when he failed to challenge Defendant's § 3B1.1 sentence enhancements.

### B. The Record Supports Defendant's Sentence Enhancements Under U.S.S.G. § 2B3.1.

Defendant next argues that counsel was ineffective in not challenging his § 2B3.1 sentence enhancements. He claims that these enhancements should not

apply because he did not intimidate, use physical force, or threaten anyone with death during the bank robberies. *See* Dkt. No. 50, p. 4 (Pg. ID 176). Defendant, however, fails to demonstrate that counsel's representation fell below an objective standard of reasonableness.

In regard to the crime of robbery, U.S.S.G. § 2B3.1(b)(2)(F) provides that if a threat of death is made during such an offense, the court should increase the defendant's offense level by two points. U.S.S.G. § 2B3.1(b)(2)(F). Application Note Six to this section goes on to explain that a threat of death "may be [made] in the form of an oral or written statement, act, gesture, or combination thereof." U.S.S.G. § 2B3.1 n.6. Hence, "the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply." *Id.* Finally, when deciding whether § 2B3.1 is applicable, courts are required to keep in mind "that the intent of this provision is to provide an increased offense level for cases in which offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." *Id.*

Here, the record supports the finding that during Defendant's June 6, 2016 bank robbery, he made a threat that would instill the fear of death in a reasonable person. Indeed, handing someone a demand note reading, "GIVE ME 45000 I DON'T WANT TO HURT YOU," implies that anyone who does not comply risks getting shot, especially in the context of a bank robbery, which traditionally

involves the use of firearms. While Defendant maintains that he had a calm, nonthreatening demeanor when he gave the bank teller the demand note, a reasonable person on the other end of his threat may not have perceived him the same way. This is even more true for bank tellers, who have a heightened sensitivity to threats of violence due to the nature of their work. Hence, counsel's representation of Defendant did not fall below an objective standard of reasonableness when he failed to object to the § 2B3.1 enhancement connected to Defendant's June 6, 2016 bank robbery conviction.

Nor did counsel's representation fall below an objective standard of reasonableness when he failed to object to the § 2B3.1 enhancements on the seven other bank robberies. The stipulated facts in Defendant's plea agreement explicitly state that in six of the seven robberies, a demand note was used. Although the content of those notes is not specified in the agreement, the Probation Office's pretrial sentencing report provides more detail, and indicates that the demand notes contained similar or more substantial threats than those made during the June 6, 2016 bank robbery. *See* Pretrial Sentencing Report, pp. 6-7. And with respect to the May 27, 2017 bank robbery, which neither the plea agreement nor the pretrial sentencing report specifies whether a demand note was used, it is reasonable to presume that it involved the use of such, or some other threat of death, considering every other robbery committed during this time period followed the exact same

pattern. *See id.* Accordingly, the Court cannot find that counsel was ineffective for failing to challenge Defendant's § 2B3.1 enhancements.[2]

**V. CONCLUSION**

For the reasons stated herein, the Court will DENY Defendant's Motion to Vacate Sentence [#50]. The Court will also DENY Defendant a Certificate of Appealability because no reasonable jurist could question or disagree with the above findings and conclusions. *See* Rule 11 of Rules Governing Section 2254 and 2255 Cases ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."); 28 U.S.C. § 2253(c)(2) (A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (A petitioner must show "that reasonable jurists could debate whether (or, for the matter, agree that) the petition should have been resolved in a different manner or that the issues present were adequate to deserve encouragement to proceed further.").

---

[2] Defendant also suggests that the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) impacts this case. There, the Court ruled that 18 U.S.C. § 16(b), which defines a crime of violence, was unconstitutionally vague as incorporated into the Immigration and Nationality Act. But whether Defendant's offense is considered a crime of violence has no bearing on the matter currently before the Court. Moreover, Defendant was convicted under a different statute than was at issue in *Dimaya*.

IT IS SO ORDERED.

Dated: June 14, 2019

                                          s/Gershwin A. Drain
                                          HON. GERSHWIN A. DRAIN
                                          United States District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 14, 2019, by electronic and/or ordinary mail.

                                            s/Teresa McGovern
                                            Case Manager