UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

DAMON WARD,

    Defendant.
_____/

Case No. 16-cr-20632

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [#67, #69, & #74]**

**I. INTRODUCTION**

On July 6, 2021, Damond Ward submitted a motion for a sentence reduction. ECF No. 67, PageID.291. After the Court granted Mr. Ward's motion to appoint counsel, Mr. Ward submitted a supplemental motion to reduce his sentence, through counsel, on July 27, 2021. ECF No. 69, PageID.327. On August 31, 2021, Mr. Ward filed another supplemental motion in support of his request for a reduced sentence. ECF No. 74, PageID.360.

Presently before the Court are Mr. Ward's motions for compassionate release pursuant to 18 U.S.C. § 3582(c). ECF Nos. 67, 69, 74. Mr. Ward seeks release from prison, arguing that his obesity and sleep apnea increase his risk for COVID-19 health complications if he is exposed to the virus. No. 74, PageID.367.

1

The Government opposes his motions, arguing that Mr. Ward, like more than 80 percent of FCI McKean's inmates, is fully vaccinated against COVID-19. ECF No. 76, PageID.400. On October 19, 2021, the Government submitted notice of supplemental authority discussing the Sixth Circuit's recent opinion in *United States v. Lemon*, 15 F.4th 747 (6th Cir. 2021). ECF No. 80, PageID.437.

Upon review of the parties' submissions, the Court concludes oral argument will not aid in the matter's disposition. Therefore, the Court will resolve Mr. Ward's motions on the briefs. E.D. Mich. L.R. 7.1(f)(2). After reviewing the briefs, the Court will DENY Mr. Ward's motions for the reasons discussed below.

## II. FACTUAL BACKGROUND

Mr. Ward is a 25-year-old African American male. ECF No. 74, PageID.361–362. At 239 pounds and five feet and seven inches tall, he identifies as obese. ECF No. 74, PageID.367. The Court sentenced then 20-year-old Mr. Ward to 108 months incarceration, another three years of supervised release, and restitution over $100,000, after he plead guilty to violating 18 U.S.C. § 2113(a) Bank Robbery. ECF No. 76, PageID.394; ECF No. 74-1, PageID.374. The sentence's severity reflects the seriousness of Mr. Ward's crime: participation in a 2016 bank robbery conspiracy. ECF No. 37, PageID.104–105.

Without deadly weapons, Mr. Ward handed notes to bank tellers ordering them to surrender money. *Id*. In May 2016, Mr. Ward and others robbed two Lake Trust Credit Unions in Lansing, Michigan. *Id*. at 104. The tellers surrendered $46,200 to Mr. Ward. *Id*. On June 1, 2016, Mr. Ward robbed a PNC Bank in Plymouth, Michigan, taking home $3,300. *Id*. Five days later, law enforcement caught Mr. Ward robbing a bank in Ann Arbor, Michigan, which gave rise to his indictment. ECF No. 12, PageID.24. He was released on bond ECF No. 76, PageID.392.

In July 2016, Mr. Ward moved his bank robbing spree into Ohio, where he recruited a single mother to participate in the robberies with him. *Id*. On July 8, 2016, Mr. Ward and the single mother robbed a Huntington Bank in Toledo where he took $10,000. ECF No. 37, PageID.104. Over a month later in Sylvania, Ohio, the two bank robbers took $10,634 from a Great Lakes Credit Union. *Id*. On August 16, 2016, Mr. Ward and the single mother returned to Michigan, stealing $8,922 from a Genesy's Credit Union in Marysville. *Id*. at PageID.105. Mr. Ward's final bank robbery occurred on September 12, 2016, at a COPOCO Credit Union in Saginaw, Michigan, where he stole $9,200. Mr. Ward was arraigned a week later, but his release on bond continued until November 2016. ECF No. 23, PageID.67; ECF No. 27, PageID.76. The robberies were Mr. Ward's first record of serious criminal misconduct. ECF No. 46, PageID.152.

Mr. Ward's poor behavior continued in prison. On January 11, 2017, Mr. Ward received a citation for letting another inmate use his phone. ECF No. 77-1, PageID.418. Mr. Ward engaged in a seven person fight on September 18, 2017. *Id*. Next January in 2018, Mr. Ward assaulted a handcuffed man without causing serious injuries. *Id*. Mr. Ward received two more citations in 2018: one for destroying a mattress and stuffing a jumpsuit, and another citation for taking a box of ice cream bars without permission. *Id*. at PageID.417. And on May 21, 2021, prison officials cited Mr. Ward for sending an unauthorized email to another inmate. *Id*.

Today, Mr. Ward has served over 58 months of his sentence. ECF No. 74, PageID.361. He is rehabilitating himself by taking prison programming courses, tutoring his peers, and receiving job training with lift trucks. ECF No. 74, PageID.368. Mr. Ward's anticipated release date is November 11, 2024. ECF No. 76, PageID.394.

### III. DISCUSSION

Title 18 U.S.C. § 3582(c)(1)(A) governs the Court's authority to consider compassionate release motions. The Court addresses three questions to determine a defendant's eligibility for compassionate release: (1) whether the defendant exhausted administrative remedies, (2) whether "extraordinary and compelling

reasons" exist warranting the defendant's release, and (3) whether release is consistent with the 18 U.S.C. § 3553(a) sentencing factors. *See United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021). There is no dispute that Mr. Ward exhausted his administrative remedies, so the Court will focus on the final two questions. ECF No. 76, PageID.391.

Mr. Ward argues that extraordinary and compelling reasons for release are present because his obesity and sleep apnea place him at heightened risk for COVID-19 related health complications while incarcerated. ECF No. 74, PageID.367–368. The Government counters that Mr. Ward's COVID-19 vaccination fully protects him from the virus, so his health concerns are speculative. ECF No. 76, PageID.404. Even if extraordinary and compelling reasons existed, the Government contends, the § 3553(a) factors do not favor reducing Mr. Ward's sentence at this time. *Id*. at PageID.411.

### A. Extraordinary and Compelling Reasons

Courts in the Eastern District of Michigan often find compelling and extraordinary reasons for release when older defendants have multiple health concerns. *See, e.g.*, *Jones v. United States*, No. 17-20608, 2021 U.S. Dist. LEXIS 178369, at *3 (E.D. Mich. Sept. 20, 2021) (releasing a 65-year-old with chronic kidney disease, chronic inflammatory lung disease, pre-diabetes, hypertension,

5

enlarged prostate, and other health complications); *United States v. Ball*, No. 06-20465, 2021 U.S. Dist. LEXIS 107594, at *11–*12 (E.D. Mich. June 9, 2021) (modifying a 55-year-old's sentence because of myriad health concerns "rais[ing] his risk of severe illness from COVID-19.").

Extraordinary and compelling reasons supporting release extend beyond a defendant's health too. For example, this Court found extraordinary and compelling reasons present when a defendant's family experienced financial hardships and occupational care challenges for a defendant's family member. *See United States v. Watson*, No. 19-20245, 2021 U.S. Dist. LEXIS 119857, at *16 (E.D. Mich. June 28, 2021) ("find[ing] extraordinary and compelling reasons for Defendant's release based on family circumstances."). In sum, what amounts to an extraordinary and compelling reason for release depends on the context behind each claimant's motion.

Here, Mr. Ward is 25 years old, obese, and suffers from sleep apnea, which the Government admits could warrant release as an extraordinary and compelling reason amidst the COVID-19 pandemic. ECF No. 76, PageID.404. However, he is fully vaccinated against the virus. ECF No. 77-2, PageID.423. The Sixth Circuit looks unfavorably on the argument that extraordinary and compelling reasons for a sentence reduction exists when an incarcerated person can access COVID-19 vaccines. *See United States v. Traylor*, 16 F.4th 485, 487 (6th Cir.

2021) (affirming the sentence reduction denial of an obese defendant with sleep apnea); *see also Lemons*, 15 F.4th at 751 (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). The Sixth Circuit's "precedential roadblock" does not mean a fully vaccinated Mr. Ward cannot establish extraordinary and compelling medical reasons for release as the pandemic evolves. *Lemons*, 15 F.4th at 750. Determining whether extraordinary or compelling reasons for release exist is a fact specific inquiry. For now, Sixth Circuit precedent weighs heavily against Mr. Ward's immediate release. *See Traylor*, 16 F.4th 485, 487 ("Accepting the serious nature of [defendant's] alleged medical conditions, her argument is foreclosed by our recent holding that 'a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction.'") (quoting *Lemons*, 15 F.4th at 751).

Despite being fully vaccinated, Mr. Ward argues that his obesity and sleep apnea amount to extraordinary and compelling reasons for release during the pandemic. ECF No. 74, PageID.367. However, he cites outdated authority involving unvaccinated defendants in the pandemic's early stages in support of that argument, making his case significantly distinguishable. *See, e.g.*, *United States v. Saad*, No. 16-20197, U.S. Dist. LEXIS 74949, at *20 (E.D. Mich. Apr. 29, 2020) (decided before COVID-19 vaccines existed); *Miller v. United States*, 453 F. Supp.

7

3d 1062, 1068 (E.D. Mich. Apr. 9, 2020) (same); *United States v. Perez*, 451 F. Supp. 3d 288, 294 (S.D.N.Y. Apr. 1, 2020) (same). Compassionate release motions granted recently involve unvaccinated defendants who are elderly and suffering from various health complications. *E.g.*, *Jones*, 2021 U.S. Dist. LEXIS 178368, at *3.

Mr. Ward's obesity places him at greater risk for COVID-19 health complications should he become reinfected. Yet he is not elderly and most importantly, he is vaccinated against the virus. The Government submits persuasive public health authority demonstrating that fully vaccinated individuals have far greater protection from COVID-19 complications compared to unvaccinated people. ECF No. 76, PageID.407–409. One CDC report the Government cites explains how the vaccines remain "highly effective in preventing COVID-19 associated hospitalization" in older, diverse populations. *Id*. at PageID.409. Mr. Ward's health conditions and status as an incarcerated individual coupled with the COVID-19 pandemic do not amount to extraordinary and compelling reasons supporting a sentence reduction.

The Court also recognizes that before Mr. Ward received a vaccine, he contracted COVID-19 and luckily survived. ECF No. 74, PageID.368. The Government argues that even if Mr. Ward was unvaccinated, his prior infection would render him safe from the virus's deadliest effects. ECF No. 76, PageID.405.

8

Some courts have reasoned that the risk of reinfection is too speculative to constitute an extraordinary and compelling reason for release. *See United States v. Sookdeo*, 851 F. App'x 263, 264–65 (2d Cir. 2021). However, this Court has previously rejected such arguments and continues to reject them today. *See Watson*, 2021 U.S. Dist. LEXIS 119857, at *10. Incarcerated people are particularly vulnerable to COVID-19 because prisons are close-quarter spaces. *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated June 9, 2021). The threat COVID-19 poses in prisons is heightened as prison staff continue reporting positive infections at FCI McKean, despite vaccines being widely available. BOP, "Coronavirus," https://www.bop.gov/coronavirus/. The Court therefore declines to modify its prior finding regarding extraordinary and compelling reasons on the basis that someone recovered from COVID-19.

### B. 18 U.S.C. § 3553(a) Factors

Even if Mr. Ward established extraordinary and compelling reasons for release, the Government argues that the § 3553(a) factors disfavor a sentence reduction. ECF No. 76, PageID.411. Specifically, the Government contends that: (1) the severity of Mr. Ward's underlying crime, and (2) the amount of time he

served relative to his overall sentence, demonstrates that the § 3553(a) factors weigh against release.

"District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020). Courts need not consider all factors—only those dispositive to a defendant's claim. *Id*. The § 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (3) "to afford adequate deterrence to criminal conduct," (4) "to protect the public from further crimes of the defendant," and (5) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

The Court finds the severity of Mr. Ward's crime disfavors reducing his sentence. Mr. Ward committed serious offenses—multiple bank robberies—that justify his 108-month carceral term. ECF No. 37, PageID.104–105. Following incarceration, Mr. Ward faces up to three years of supervised release. *Id*. at 105. The Court agrees with the Government that robbing banks is a dangerous activity that places peoples' lives at risk, including Mr. Ward's. ECF No. 76, PageID.413. Mr. Ward also recruited others into his bank robbing conspiracy, including a single

mother. Even while on pretrial release, Mr. Ward continued robbing banks until his arrest in late 2016. ECF No. 76, PageID.394. The Court therefore agrees with the Government that the gravity of Mr. Ward's crimes weigh against immediate release.

The need for Mr. Ward's current sentence length supports maintaining his sentence as well. Mr. Ward served approximately 58 months of his 108-month sentence, just over 50 percent. ECF No. 74, PageID.361. However, the 108-month sentence was at the low end of Mr. Ward's guideline range. ECF No. 37, PageID.103. Courts in the Eastern District have typically found the length of a sentence served to weigh against defendants when less than 50 percent of the sentence is served. *See, e.g.*, *United States v. Constantine*, No. 18-20655, 2021 U.S. Dist. LEXIS 188942, at *12 (E.D. Mich. Oct. 1, 2021) (denying release when defendant served less than half his sentence); *United States v. Richards*, No. 12-20372, 2021 U.S. Dist. LEXIS 44298, at *3 (E.D. Mich. Mar. 10, 2021) (same); *but see Jones*, 2021 U.S. Dist. LEXIS 178368, at *3 (releasing a defendant who served "just over 30 percent of his sentence."). Here, Mr. Ward's sentence was already at the lowest end of his guidelines range. ECF No. 37, PageID.103. Accordingly, the Court does not find the time served to weigh in favor of release.

Mr. Ward's behavior in prison also favors denying his motions. In 2018, Mr. Ward had two physical altercations with incarcerated people. One altercation

11

involved a handcuffed individual. Mr. Ward tried stealing ice cream as well, suggesting that meaningful rehabilitation from the behavior that landed him in prison has not occurred. The Court acknowledges that Mr. Ward's programming courses indicate positive character development. However, greater behavioral changes are necessary before the § 3553(a) factors can favor release.

The burden is on Mr. Ward to "make a compelling case as to why the … § 3553(a) analysis would be different if conducted today." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). His crime's severity and the amount of his sentence served does not persuade the Court that Mr. Ward has met his burden under the relevant § 3553(a) factors. As the COVID-19 pandemic continues, circumstances may arise where Mr. Ward's original custodial sentence becomes unsustainable. While bank robbery is a serious crime, the punishment is not a death sentence from viral infection. As the Sixth Circuit recently recognized:

> By the end of 2020, one in every five persons incarcerated in the United States had tested positive for COVID-19. At least 275,000 imprisoned persons across the country have been infected; more than 1,700 have died. A court's refusal to reduce an incarcerated person's sentence could result in death.

*United States v. Mathews*, 846 F. App'x 362, 363–64 (6th Cir. 2021). Mr. Ward's COVID-19 vaccine protects him from COVID-19, despite prison staff still

bringing the virus into FCI McKean. *See* BOP, "Coronavirus," https://www.bop.gov/coronavirus/.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Defendant's motion for compassionate release [#67, #69, and #74] are DENIED.

**IT IS SO ORDERED.**

Dated: January 7, 2022
/s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 7, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager